**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

CALVIN HEMPHILL, #406562          *

               Plaintiff,         *

v.                         *      CIVIL ACTION NO.  WDQ-12-2266

SHAVELLA MILES, *et al.*        *

              Defendants.    *

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

**MEMORANDUM IN SUPPORT OF DEFENDANT OFFICERS'**
**MOTION TO DISMISS, OR IN THE ALTERNATIVE,**
**MOTION FOR SUMMARY JUDGMENT**

Tamal A. Banton
Federal Bar No. 27206
Assistant Attorney General
tbanton@oag.state.md.us

Maryland Office of Attorney General
Department of Public Safety & Correctional
Services
115 Sudbrook Lane, Suite A
Pikesville, Maryland 21208
(410) 585-3070 telephone
(410) 764-5366 facsimile

*Attorneys for Defendant Officers*

# TABLE OF CONTENTS

I.  STATEMENT OF THE CASE…………………………………………….............3

II.  STATEMENT OF FACTS ………………………………………….................4

III.  THE COMPLAINT……………………………………………………….10

IV.  STANDARDS OF REVIEW …………………………………………...11

    A.  Motion to Dismiss…………………………………………………...11

    B.  Motion for Summary Judgment…………………………………………..12

V.  ARGUMENT …………………………………………………………...14

    A.  Inmate Hemphill Has Failed To Exhaust His Administrative Remedies As
    Required By The Prison Litigation Reform Act (the "PLRA") Codified
    As 42 U.S.C. 1997(e)...........................................................................................14

    B.  Eleventh Amendment Bars the Official Capacity Claims for Money Damages
    Against Defendant Officers………………………………………………16

    C.  Defendant Officers Are Not "Persons" That Can Be Sued Under
    42 U.S.C. § 1983 in their Official Capacity………………………………………18

    D.  Inmate Hemphill Fails to State a Claim For Which Relief Can Be Granted……...19

    E.  Defendant Officers Are Entitled to Qualified Immunity…………………………22

    F.  CO Tucker and CO Evans Were Not Present at BCDC on June 2, 2012……........24

    G.  Captain Hancock Does Not Exist…………………………………………………25

    H.  There Is No Genuine Dispute of Material Fact that the Force Used by
    Defendant Officers Was Applied in Good Faith to Restore Order and
    Control, Not Punishment…………………………………………….................25

VI.  CONCLUSION ……………………………………………………………27


EXHIBIT LIST ………………………………………………………………..28

Defendants, Securities Chief Shavella Miles ("Chief Miles"), Sergeant Michael Porter ("Sgt. Porter"), Correctional Officer Kwanita West ("CO West"), Correctional Officer Teron Knight ("CO Knight"), Correctional Officer Tracey Tucker ("CO Tucker"), and Correctional Officer Lisa Evans ("CO Evans") (collectively, "Defendant Officers")[1], by their undersigned counsel, pursuant to Fed. R. Civ. P. 12(b)(6) and 56 and L.R. 105, in support of their motion to dismiss, or in the alternative, motion for summary judgment, submit this memorandum and say:

I.  STATEMENT OF THE CASE

On July 31, 2012, Plaintiff, Inmate Calvin Hemphill, #406562, ("Inmate Hemphill") filed a *Pro Se* handwritten "FORM TO BE USED BY A PRISONER BY A PRISONER FILING A COMPLAINT UNDER THE CIVIL RIGHTS ACT, 42 U.S.C. § 1983" and an accompanying "Request for Administrative Remedy" to the Warden of Maryland Reception, Diagnostic and Classification Center ("MRDCC") after orchestrating a plan to attack a correctional officer and file lawsuit under the erroneous presumption that any force used to subdue him after his planned attack would constitute "retaliation" against him in violation of his constitutionally protected rights.  Inmate Hemphill alleges that his constitutional rights under the Fifth, Eighth, and Fourteenth Amendments of the United States Constitution were violated while he was housed as a pretrial detainee at BDCD on or about June 2, 2012 when he physically attacked CO West and was subsequently subdued by the responding correctional officers through the use of force.  Inmate Hemphill claims that his rights to due process were violated under said amendments and/or that the correctional officers named in the Complaint used excessive

---

[1] There is no person named Captain Hancock and thus, service of process has not been effectuated and/or accepted for any individual named Captain Hancock; and, based upon the allegations in the Complaint, counsel for Defendant Officers is unable to discern who Inmate Hemphill means when he identifies a correctional officer as Captain Hancock.

force against him. Inmate Hemphill seeks compensatory damages in the amount of $17,650.00, punitive damages in the amount of $ 66,000.00, and attorney's fees and costs. Inmate Hemphill's Complaint should be dismissed as a matter of law and/or summary judgment in favor of Defendant Officers should be granted because Inmate Hemphill has failed to exhaust his administrative remedies, has failed to state a claim for which relief can be granted; and additionally, there is no dispute of material fact that the Defendant Officers' use of force was reasonably necessary to regain and maintain security and control of Inmate Hemphill after he attacked and physically assaulted CO West without provocation or warning. There is no material dispute of facts that even after he was handcuffed, Inmate Hemphill remained hostile and combative and continued to resist the attempts by correctional officers at BCDC to regain control of him. Thus, there were no actions taken by Defendant Officers that violated Inmate Hemphill's constitutional rights and as a matter of law, Defendant Officers are entitled to dismissal of the Complaint and/or summary judgment in their favor.

## II. STATEMENT OF FACTS[2]

Inmate Hemphill is currently an inmate within the Maryland Division of Correction ("DOC") incarcerated at the Roxbury Correctional Institution ("RCI") located in Hagerstown, Maryland, however, prior to his incarceration at RCI, Inmate Hemphill was a "pretrial detainee" at the Baltimore City Detention Center ("BCDC"). BCDC is a pretrial detention facility for inmates committed or transferred to the custody of the Commissioner of the Division of Pretrial Detention and Services. *See* Md. Code Ann., Corr. Servs. § 5-401. *See also* Md. Code Ann., Corr. Servs.§ 5-101(b).

---

[2] For purposes of this Memorandum, the "Statement of Facts" is primarily based upon the evidence presented and produced by Plaintiff, unless otherwise stated or noted herein given the standard of review of a Motion for Summary Judgment.

On June 1, 2012, Inmate Hemphill was a member of the Black Guerilla Family ("BGF") and he was housed as pretrial detainee in the F-section of BCDC. (Exs. 1-2). Inmate Hemphill is a large muscular man that works out daily that provided "muscle" and/or was a "hit man" for the BGF. (Ex.1). On said date, the F-section of BCDC was on "lockdown" because of a stabbing incident that occurred the prior week in that section. (Ex. 1-2. *See also* Compl., ¶ 11). As a BGF hit man, it is extremely possible that Inmate Hemphill could have been involved with the stabbing. (*Id*). On June 1, 2012, any and all investigations of the stabbing incident had not been concluded and Inmate Hemphill certainly was not aware of the details, facts and/or investigative leads relating to the investigations of the stabbing. (*Id*). Hence, Inmate Hemphill could have been suspected as to having involvement with the stabbing. (*Id.*).

CO West was working the A-shift, i.e. 7 am- 3 pm morning shift, on Friday, June 1, 2012. (Ex. 1). She had returned to work that day of Friday after taking four (4) days off in addition to Memorial Day weekend. (*Id.*). CO West had spent some time out of town during her days off from work. (*Id.*). During her shift upon her return, Inmate Tavon White ("Inmate White") questioned CO West about Inmate Hemphill telling her about "his business." (*Id.*). Inmate White was the recognized leader of the BGF within BCDC. (Exs. 1, 3-4). Inmate White was also engaged in inappropriate behavior with other correctional officers within the institution, including but not limited to sexual relations and the importing of contraband into BCDC. (Exs. 1, 3). Inmate White blatantly demonstrated that he was concerned about Inmate Hemphill's conversations with CO West which could subsequently lead to criminal charges, institutional infractions, disciplinary segregation, and/or detrimental legal reprimand for the criminal wrongdoing Inmate White was engaged in. (Ex. 1). Inmate White could have consequently obtained additional criminal charges and receive a longer term of confinement as a result. If Inmate

White believed that CO West had knowledge of details and facts relating to his illegal activities within BCDC, then CO West could have posed a threat to Inmate White's operation because she was not one of the correctional officers engaged in illegal activity with him. (Ex. 1).  If CO West posed a threat of risk to Inmate White and the BGF's operations at BCDC, then the risk of harm posed against her consequently became heightened and CO West could have been subjected to harm as the hands of another inmate and/or member of the BGF.  (*Id*).  On June 1, 2012, Inmate Hemphill called his mother and instructed her to "call the Attorney General's Office" on June 2, 2012 and inform said office that he had been involved in an incident with correctional officers at BCDC."  (Compl. ¶10).  Hence, Inmate Hemphill had made plans to attack CO West as well as plans to bring a notice of a claim to the Office of Attorney General after he envisioned he would be assaulted for attacking CO West.  (Compl. ¶¶ 5-10).  Inmate Hemphill also began to scheme on how to place a "hit" on Inmate White to get moved out of BCDC.  (*Id*).  Inmate Hemphill even "sent his cellmate to summon" Inmate White "under the guise of wanting to apologize" in order to effectuate a "hit" upon Inmate White, however, Inmate White was sleep.  (*Id.*).

CO West was working the A-shift, i.e. 7 am – 3 pm morning shift, on Saturday, June 2, 2012 in F-section at BCDC.  (Ex. 1).  Inmate Hemphill was a "working man" in F-section, i.e. he cleaned the tier and conducted the inmate feed-up for his housing section along with two other inmates (Charles Benjamin-El SID #946105 and Steven Loney SID #2925358) from his section.  (*Id*).  Inmate Hemphill did not appear hostile or upset that morning and was passing out breakfast trays in accordance with his "working man" duties.  (*Id*).  At approximately 7:46 a.m., Inmate Hemphill, while CO West was seated at her desk viewing the section as the other two working men were conducting feed-up, appeared to be assisting with his "working men" duties by passing out breakfast trays, but instead, immediately turned

from the Feed-Up Cart and with a closed fist, and possibly with a weapon in his hand, caught CO West off-guard by striking her in the left side of her head. (Ex. 1). CO West felt a hard bang to the left side of her head, which immediately left a gash that began to bleed profusely. (*Id*). It is possible that Inmate Hemphill struck CO West "his knife." (*Id*.). CO West was hit so hard by Inmate Hemphill that she immediately fell from her chair to the floor where Inmate Hemphill then stood over her and repeatedly struck CO West with several closed-fist blows to the head while yelling "BITCH!!" and "I'M GOING TO KILL YOU BITCH!" with each lethal blow. (Exs. 1-2). Inmate Hemphill also slammed CO West's head to the cement floor and stomped her twice in the upper body. (*Id*). CO West was unable to fight back and was screaming in pain and seeking help while crawling into the fetal position. (*Id*). Inmate Hemphill continued with his attack upon CO West until the two other inmate "working men" intervened in Inmate Hemphill's attack by grabbing, tackling, and wrestling him to the ground. (*Id*). At approximately 7:48, CO West was able to call for assistance through her radio by giving the code indicating that a correctional officer was being assaulted by an inmate. (Exs. 1, 2, 4-5). Other correctional officers immediately began to respond to CO West's distress call. (Exs. 2, 4-5).

CO Knight, who was working in G-section of BCDC, i.e. the next adjacent section to F-section, arrived at F-section while CO West was making the code call and the two other inmates were wrestling with Inmate Hemphill on the ground. (Ex. 2). When CO Knight arrived at the scene, the two other inmates removed themselves from Inmate Hemphill and Inmate Hemphill began to stand. (*Id*.). In order to take control of Inmate Hemphill, CO Knight ordered that Inmate Hemphill turn around to be handcuffed as the other inmates step away from Inmate Hemphill and Inmate Hemphill proceeded back to his feet. (Exs. 2, 4). Inmate Hemphill then began to erratically swing his arms with clinched fists at CO Knight as he refused to comply with CO Knight's verbal commands. (Ex. 2). CO Knight pushed

Inmate Hemphill forward towards the wall while waiting for assistance from other officers. (*Id*). CO Knight pushed Inmate Hemphill towards the wall to prevent Inmate Hemphill from striking him and being that Inmate Hemphill refused to comply with the verbal commands given and still remained combative, this tactic helped CO Knight avoid any injury at the hands of Inmate Hemphill. (*Id*). Inmate Hemphill was totally out of control and CO Knight could not take control of Inmate Hemphill without assistance from other correctional officers. (*Id*).

When Sgt. Porter and Sgt. Craig Williams ("Sgt. Williams") arrived at F-section, Sgt. Porter observed CO West on the floor bleeding and CO Knight trying to restrain Inmate Hemphill. (Ex. 4). Sgt. Porter and Sgt. Williams immediately assisted CO Knight by grabbing Inmate Hemphill by his arms. (*Id*). When Sgt. Porter and Sgt. Williams grabbed Inmate Hemphill's arms, Inmate Hemphill was taken to the ground, at which time he hit his head on the ground, and he was then placed on his stomach area. (*Id*). Inmate Hemphill continued to be aggressive, combative, and resistant even while on the ground. (*Id*). CO Knight gave Inmate Hemphill verbal commands to "stop resisting," however, Inmate Hemphill continued to resist. (Ex. 2, 4). With the help of Sgt. Porter and Sgt. Williams, CO Knight was able to get metal handcuffs placed on Inmate Hemphill, however, Inmate Hemphill remained aggressive, combative and resistance as he was stood up by the correctional officers. (*Id*).

When Inmate Hemphill was brought to his feet by Sgt. Porter, Sgt. Williams, and CO Knight, Capt. Kevin Hickson ("Capt. Hickson") and Sgt. Latham Harcum ("Sgt. Harcum") arrived to the scene and observed the correctional officers struggling with the combative Inmate Hemphill. (Ex. 5). Capt. Hickson and Sgt. Harcum took possession of Inmate Hemphill from Sgt. Porter, Sgt. Williams and CO Knight. (*Id*). Inmate Hemphill was then immediately escorted by Capt. Hickson and Sgt. Harcum to the MDC clinic for medical evaluation without further incident. (*Id*). When Inmate Hemphill was seen by

medical staff, he refused treatment. (Compl, ¶ 19). Inmate Hemphill sustained superficial abrasions on his head, back, shoulders, upper chest and collarbone area. (Ex. 6).

CO West suffered a laceration to her forehead, a blackened left eye that swelled shut, and numerous contusions to the sides of her face, head and arms. (Exs. 1, 3). CO West was taken to the medical clinic where she received initial treatment for her injuries, and then was taken by ambulance to Johns Hopkins Hospital where CO West received further medical treatment for her injuries sustained as a result of Inmate Hemphill's attack. (*Id*). CO West received sutures to close her laceration on her forehead at Johns Hopkins Hospital. (Ex. 1).

On June 2, 2012, Inmate Hemphill received a "Notice of Inmate Rule Violation and Disciplinary Hearing," i.e. a BCDC institutional infraction. (Ex. 8). Inmate Hemphill was also charged on said date with First Degree and Second Degree Assault of a DOC employee (CR 3-210) and was criminally served on June 5, 2012. (Ex. 9). Inmate Hemphill pled guilty on both counts and was sentenced. (*Id*).

On June 28, 2012, Inmate Hemphill filed a "Maryland Division of Correction Request for Administrative Remedy" ("ARP Complaint") at MRDCC alleging that he was "assaulted by numerous C.O.'s at BCDC…" (Ex. 10). In his ARP Complaint, Inmate Hemphill acknowledges that "there's not much MRDCC can do…" (*Id.*). On July 2, 2012, the warden of MRDCC dismissed the ARP Complaint informing Inmate Hemphill that his grievance should be filed with BCDC's Grievance Office because "the ARP process is applicable to DOC inmates who are housed in a DOC facility." (*Id.*). Inmate Hemphill never filed a formal grievance with BCDC in accordance with BCDC's established grievance procedures. (Ex. 3). Instead, Inmate Hemphill filed a Complaint before this Court. (ECF No. 1).

III.     THE COMPLAINT

Inmate Hemphill's Complaint does not contain and/or designate any counts but Inmate Hemphill has made several allegations under 42 U.S.C. § 1983 against each of the Defendant Officers.  (*See* Compl.).   In the Complaint, Inmate Hemphill specifically alleges (1) Chief Miles violated his due process rights under the Fifth and Fourteenth Amendment of the United States Constitution alleging "deliberate indifference" to his safety in complete disregard for his safety; (2) Captain Hancock and Sgt. Porter violated his Eighth Amendment right to be free from cruel and unusual punishment, along with his Fourteenth Amendment rights through the use of excessive force by "assaulting [him] while [he] was handcuffed;" (3) CO West violated his Fourteenth Amendment right to due process and Eighth Amendment right to be free from cruel and unusual punishment through "deliberate indifference" regarding his safety by disclosing information to the BGF that could cause him harm and refusing to move him out of harm's way; (4) CO Knight violated his Eighth Amendment right to be free from cruel and unusual punishment, along with his Fourteenth Amendment right to due process by failing to intervene when other officers attacked him and by falsifying a disciplinary report in an attempt to cover up the assault; (5) CO Tucker violated his Eighth Amendment right to be free from cruel and unusual punishment, along with his Fourteenth Amendment right to due process through the use of excessive force by "assaulting [him] while [he] was handcuffed;" (6) CO Evans violated his Eighth Amendment right to be free from cruel and unusual punishment, along with his Fourteenth Amendment right to due process through the use of excessive force by "assaulting [him] while [he] was handcuffed;" and claims against an unidentified Jane Doe and John Doe claiming they violated his Eighth Amendment right to be free from cruel and unusual punishment, along with his Fourteenth Amendment right to due process through the use of excessive force by "assaulting [him] while [he] was handcuffed."  (*See id*).   Inmate

Hemphill seeks compensatory damages in the amount of $17,650.00 – $500.00 against Captain Hancock; $2,250.00 against Sgt. Porter; $3,725.00 against CO Tucker; $3,725.00 against CO Evans; $3,725.00 against Jane Doe #3, and $3,725.00 against John Doe #1 , punitive damages in the amount of $ 66,000.00 – $10,000.00 against Chief Miles; $4,500.00 against Captain Hancock; $8,000.00 against Sgt. Porter; $10,000.00 against CO West; $3,500.00 against CO Knight; $7,500.00 against CO Tucker; $7,500.00 against CO Evans; $7,500.00 against Jane Doe #3; and $7,500.00 against John Doe #1, and attorney's fees and costs.

## IV.  STANDARDS OF REVIEW

### A.  Motion to Dismiss

A motion filed pursuant to Fed. R. Civ. P. 12(b)(6) contests the legal sufficiency of the Complaint. *Edwards v. City of Goldsboro*, 178 F. 2d 231, 243 (4th Cir. 1999).  In reviewing said motion, the Court accepts all well-pleaded allegations as true and construes the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff. *Ibarra v. United States*, 120 F. 3d 472, 474 (4th Cir. 1997).  A Complaint should not be dismissed for any claim that has been stated adequately or that may be supported by showing any set of facts consistent with the allegations in the Complaint. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 560-63 (2007).  The Complaint must, however, allege "enough facts to state a claim to relief that is plausible on its face." *Girratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008)(quoting *Bell Atlantic*, 500 U.S. 544, 127 S.Ct. at 1974).  For purposes of a Fed R. Civ. P. 12(b)(6) motion, the reviewing court need not accept unsupported conclusory allegations, *Revene v. Charles County Comm'rs*, 882 F.2d 870, 873 (4th Circ. 1989), legal conclusions couched as factual allegations, *Papsan v. Allain*, 478 U.S. 265, 286, 106 S. Ct. 2932, 2944 (1986), or conclusory factual allegations devoid of any reference to actual events, practices, or policies. *United Black Firefighters v.*

*Hirst*, 604 F.2d 844, 847 (4th Circ. 1979).  *See also Girratano*, 521 F.3d at 302.  It is well recognized that only "reasonable" inferences from the evidence need be considered by the court.  *Sylvia Development Corp. v. Calvert County, Md.,* 48 F. 3d 810, 818 (4th Cir. 1995).  Additionally, it is the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial."  *Felty v. Graves-Humphreys Co*., 818 F.2d 1126, 1128 (4th Cir. 1987)(quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24, 106 S. Ct. 2548, 2553 (1980)).

Pursuant to Fed. R. Civ. P. 12(d) Defendant Officers have attached affidavits of Chief Miles, CO West, Captain Hickson, Sgt. Porter, CO Knight, CO Tucker, and CO Evans. (Exs. 1-5, 11-12).  Because such affidavits may present matters outside the pleadings, Defendant Officers have styled their dispositive motion as both a Motion to Dismiss and a Motion for Summary Judgment.

B.  <u>Motion for Summary Judgment</u>

Summary judgment is appropriate against a plaintiff who fails to make a showing sufficient to establish the existence of an element essential to his case and on which he will bear the burden of proof at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The non-moving party "may not rely merely on allegations or denials in its own pleading; rather, its response must – by affidavits or as otherwise provided in this rule set out specific facts showing a genuine issue for trial."  Fed. R. Civ. P. Rule 56(e)(2); *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).  Failure to demonstrate a genuine issue for trial will result in summary judgment.  *Bouchat v. Baltimore Ravens Football Club, Inc*. 345 F.3d 514, 522 (4th Cir. 2003).  The mere existence of a scintilla of evidence in support of a plaintiff's case is insufficient; there must be evidence on which a jury can reasonably find for the non-moving party.  *Anderson*, 477 U.S. at 242.

Summary judgment may be granted only when "there is no genuine issue as to any material fact" and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c)(2); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). In determining whether a genuine issue of material fact exists, the Court construes all facts and inferences in the light most favorable to the non-moving party, drawing all reasonable and justifiable inferences in favor of that party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986). At the same time, the Court need not accept unsupported factual allegations or conclusory factual statements that do not describe actual events. *Revene v. Charles County Commr's,* 883 F. 2d 870, 873 (4th Cir. 1989); *United Black Firefighters v. Hirst,* 604 F. 2d 844, 847 (4th Cir. 1979). If the record as a whole could not lead a rational trier of fact to find for the non-moving party, there is no "genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). Stated otherwise, summary judgment should be granted unless a reasonable jury could return a verdict for the non-moving party on the evidence presented. *Anderson,* 477 U.S. at 247-48.

Summary judgment cannot be defeated by a mere existence of some alleged factual dispute between the parties. *Anderson* at 247-48. Those disputed factual elements must be material to the legal issues in the case, and the disputes about them must be genuine, not merely speculative. *Id.* at 261-63. These concepts are embodied in the Supreme Court's pronouncement that "a complete failure of proof concerning an essential element…necessarily renders all other facts immaterial." *Celotex Corp.,* 477 U.S. at 323. Moreover, "a mere scintilla of evidence is not enough to create a fact issue." *Barwick v. Celotex Corp.,* 736 F. 2d 946, 958-59 (4th Cir. 1984)(*quoting Seago v. North Carolina Theaters, Inc.,* 42 F.R.D. 627, 632 (E.D.N.C. 1966), *aff'd,* 388 F. 2d 987 (4th Cir. 1967)). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249-50.

## V.    ARGUMENT

A.  Inmate Hemphill Has Failed To Exhaust His Administrative Remedies As Required By The Prison Litigation Reform Act (the "PLRA") Codified As 42 U.S.C. 1997e

Inmate Hemphill has filed a *pro se* Complaint without exhausting his administrative remedies even though the exhaustion requirement is mandatory.  42 U.S.C. § 1997e.  Pursuant to 42 U.S.C. § 1997e, Inmate Hemphill was required to follow BCDC's grievance procedure because he was a pretrial detainee and not an inmate within the Division of Correction; hence, he was committed to the Commissioner of Pretrial Detention and Services, and not the Commissioner of Correction.  Md. Ann. Code, Corr. Servs. § 2-201.  Inmate Hemphill, however, failed to file a grievance with BCDC before filing this case.  (Ex. 3-10).

BCDC has an "Adult Resident Grievance Procedures" policy, i.e. PDSD No. 180-1, which provides an administrative remedy to pretrial detainees for "grievable issues."  (Ex. 3; Ex. 13, p. 1-2).  A grievance filed by a pretrial detainee at BCDC is to be filed "within 15 calendar days from the date on which the incident occurred..." and "shall be submitted to Resident Grievance Office ("RGO")."  (Ex. 13 at 2-3, 7).  After an investigation by the RGO staff, a "Step I decision" is issued and if the pretrial detainee seeks to appeal said decision, he "shall complete a Motion for Grievance Committee Step II form and submit the form to RGO staff."  (*Id* at 4-5, 8).  The detainee may appeal the "Step II decision" to the warden of BCDC by completing a "Motion to Appeal to the Warden, Step III form" within 3 working days of the Step II decision."  (*Id* at 5, 9).  The detainee may appeal the warden's "Step III decision" by completing a "Motion to Appeal to the Commissioner, Step IV form" within 3 working days of the Step [III] decision. (*Id.* at 6, 10).

Inmate Hemphill never filed a grievance with BCDC nor has he produced any evidence and/or proof that he exhausted his administrative remedies in accordance with PDSD No. 180-1.  (Ex 3, 13; *See*

*also* Compl.).  Instead, Inmate Hemphill attached a "Request for Administrative Remedy" ("ARP") that he filed on June 28, 2012 with the warden of MRDCC stating:

> On 6-2-12, I was assaulted by numerous C.O.'s at BCDC while I was handcuffed. Amongst those who assaulted me were Sgt. M. Porter, Capt. Hutchins or Hickson (I think his name was Hickson) and numerous female. C.O. II's (I think they were Evans Tucker and Palmer).  I sustained several injuries from this attack and I asked that charges be brought against the officers.  I was told they were investigating the assault, but charges have yet to be filed. Since then I've mailed 2 grievance forms to BCDC, to which I have yet to receive a response. I realize there's not much MRDCC can do; I just don't want these officers to get away with assaulting me.

(Compl., p. 4).

Inmate Hemphill's grievance was untimely (10 days late) and improperly submitted (wrong form and institution) as required by PDSD 180-1.  (*Cf.* Exs. 10, 13).  Consequently, a response from the warden at MRDCC was returned to Inmate Hemphill on July 2, 2012 informing him that his ARP complaint would be dismissed because the "ARP process is applicable to DOC inmates who are housed in a DOC facility," and that because Inmate Hemphill was not a DOC inmate, he "cannot utilize the ARP process." (Ex. 10).  The MRDCC warden instructed Inmate Hemphill to write to BCDC's Grievance Office.  (*Id.*). There is no allegation or evidence that Inmate Hemphill filed a grievance with BCDC's Grievance Office. (Compl.).

In addition to the fact that Inmate Hemphill's "ARP" was improper and untimely, the ARP that Inmate Hemphill has attached to his Complaint relates to allegations of an assault by correctional officers and do not, in any way, relate to Inmate Hemphill's allegations relating to his due process, deliberate indifference, Fifth Amendment, Eighth Amendment, and Fourteenth Amendment claims, or any of the other allegations contained in his Complaint outside of his "excessive force" claims.  (*Id*,). Hence, the only claims demonstrated in the ARP attached to his Complaint are the claims of use of excessive force by Sgt. Porter, "Captain Hutchins or Hickson," CO Evans, CO Tucker, and "Palmer,"

which is totally evident based upon his final sentence "I just don't want these officers to get away with assaulting me." (*Id*). Consequently, Inmate Hemphill's ARP only alleges the use of "excessive force" by the above-referenced correctional officers, and nothing more.

      B.   <u>Eleventh Amendment Bars the Official Capacity Claims for Money Damages Against Defendant Officers</u>

Inmate Hemphill's official capacity claims for monetary damages against Defendant Officers are barred by the Eleventh Amendment. Because such claims are really against the State of Maryland, i.e. the State is the real party in interest, Defendant Officers are entitled to Eleventh Amendment immunity.

The Eleventh Amendment provides as follows:

> The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or subjects of any Foreign State.

U.S. Const. amend. XI.

Although by its terms the Eleventh Amendment applies to suits brought by "Citizens of another State," it is well recognized that an "un-consenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State." *Harter v. Vernon*, 101 F.3d 334, 337 (4th Cir. 1996) quoting, *Puerto Rico Aqueduct and Sewer Auth. v. Metcalf & Eddy, Inc*., 605 U.S. 134, 144, (1993). "This immunity applies to state agencies… as well as to state employees acting in their official capacity." *Harter,* 101 F. 3d at 337; *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989); *Weller v. Department of Social Services for City of Baltimore*, 901 F.2d 387, 398 (4th Cir. 1990); *Lynn v. O'Leary*, 264 F.Supp.2d 306, 310 (D. Md. 2003). "The ultimate guarantee of the Eleventh Amendment is that non-consenting States may not be sued by private individuals in federal court." *Board of Trustees of University of Alabama v. Garrett*, 531 U.S. 356, 363 (2001). *See also*, *Kimel v. Florida Board of*

*Regents*, 528 U.S. 62, 73 (2000). "A State's constitutional interest in immunity encompasses not merely *whether* it may be sued, but *where* it may be sued." *Pennhurst State School and Hospital v. Halderman*, 465 U.S. 89, 99, (1984). For this reason, the Supreme Court

> '[C]onsistently has held that a State's waiver of sovereign immunity in its own courts is not a waiver of the Eleventh Amendment immunity in the federal courts. See, e.g., *Florida Department of Health v. Florida Nursing Home Assn.*, 450 S. 147, 150 (1981). '[I]t is not consonant with our dual system for the federal courts…to read the consent to embrace federal as well as state courts….' [A] clear declaration of the state's intention to submit its fiscal problems to other courts than those of its own creation must be found.' *Great Northern Life Insurance Co. v. Read*, 322 U.S. 47, 54 (1944)."

*Pennhurst State School and Hospital*, 465 U.S. 99, fn. 9, 104 S.Ct. at 907 (1984).

Consequently, Eleventh Amendment immunity is a limitation, actually a prohibition, on the Federal Court's jurisdiction.

This prohibition "encompasses not only actions in which a State is actually named as a defendant but also certain actions against state agents and state instrumentalities." *Regents of University of California v. Doe*, 519 U.S. 425, 429 (1997). "Thus, 'when the action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit….'" *Regents of University of California*, 519 U.S. at 429.

There are only three exceptions to a State's sovereign immunity under the Eleventh Amendment. A State may waive its immunity and consent to suit in federal court. *Green v. Mansour*, 474 U.S. 64, 68 (1985). Second, the Eleventh Amendment does not bar a suit against a state official seeking prospective relief to end a continuing violation of federal law. *Ex Parte Young*, 209 U.S. 123, 167 (1908). Third, Congress may validly abrogate the State's Eleventh Amendment immunity. *Seminole Tribe of Florida v. Florida*, 517 U.S 44, 55 (1996).

The State of Maryland has not waived its Eleventh Amendment immunity and has only expressly waived its sovereign immunity in **State** courts pursuant to §§12-104(a)(1) of the State Government Article which explicitly states that "the immunity of the State and of its units is waived as to a tort action**, in a court of the State**, to the extent provided under Paragraph (2) of this subsection." Md. Code Ann. State Gov't Article §§12-104(a)(1)(emphasis added). Further, said Article does not operate to "waive any right or defense of the State or its units, officials, or employees in an action in a court of the United States or any other state, including any defense that is available under the 11th Amendment to the United States Constitution…." Md. Code Ann. State Gov't §12-103(2). As State employees being sued in their "official capacity," Maryland law contemplates the employees acted lawfully, and the State of Maryland would be presumed to be the payer of a judgment from its Treasury. Thus, Eleventh Amendment immunity is proper for Inmate Hemphill's claims for money damages against Defendant Officers in their official capacities.

Additionally, in his Complaint, Inmate Hemphill does not allege a continuing violation of federal law in his Complaint nor does he seek prospective relief. Finally, Inmate Hemphill does not allege nor is there a Congressional Act that has abrogated the State of Maryland's Eleventh Amendment immunity. For these reasons, the Complaint should be dismissed.

C. Defendant Officers Are Not "Persons" That Can Be Sued Under 42 U.S.C. § 1983 in their Official Capacity

Inmate Hemphill has sued Defendant Officers in both their individual and official capacities under 42 U.S.C. §1983. Because in their "official capacity" Defendant Officers are not "persons," any claims for money damages under that theory ought to be dismissed.

In *Will*, *supra,* the Supreme Court of the United States made clear that although state employees are literally persons, "a suit against a state official, in his or her official capacity is not a suit against the

official but rather is a suit against the official's office." (citation omitted). "As such, it is no different from a suit against the State itself." *Will,* 491 U.S. at 71. The *Will* court went to hold "that neither a State nor its officials acting in their official capacities are "persons" under §1983." *Id.* Therefore, Inmate Hemphill cannot maintain his suit for money damages for alleged violation of 42 U.S.C. §1983 against Defendant Officers in their official capacity. Thus, if any of Inmate Hemphill's constitutional claims remain against any of the Defendant Officers, it should be in their individual capacity, not their official capacity.

    D. <u>Inmate Hemphill's Complaint Fails to State a Claim Upon Which Relief Can Be Granted</u>

    Inmate Hemphill alleges that his constitutional rights were violated under the Fifth, Eighth and Fourteenth Amendments of the United States Constitution. In his Complaint, however, he has failed to sufficiently allege a constitutional violation under the Fifth or Eighth Amendment. Thus, if Inmate Hemphill has made any allegations relating to his constitutional rights, he has ***only*** done so pursuant to the Fourteenth Amendment.

    *1. Eight Amendment Does Not Apply to Pretrial Detainees.*

    It is well established that the Eighth Amendment does not apply to pretrial detainees as the Eighth Amendment applies to convicted inmates and the Fourteenth Amendment applies to pretrial detainees. *Bell v. Wolfish,* 441 U.S. 520, 535 (1979); *Martin v. Gentile,* 849 F. 2d 863, 870 (4th Cir. 1988); *Young v. City of Mount Ranier,* 238 F. 3d 567, 574-76 (4th Cir. 2001). *See also Orem v. Rephann,* 523 F. 3d 442, 446 (4th Cir. 2008)("excessive force claims of a pretrial detainee are governed by the *Due Process Clause of the Fourteenth Amendment"*); *Young v. Prince George's County,* 355 F. 3d 751, 758 (4th Cir. 2004); *Simms v. Hardesty,* 303 F. Supp. 2d 656, 669 (D. Md. 2003). For this reason, Inmate Hemphill's Eighth

Amendment claims against CO West, CO Knight, Sgt. Porter, CO Tucker, CO Evans, and any other correctional officer[3] should be dismissed as a matter of law.

    2. *Inmate Hemphill Has Not Alleged a Violation of his Fifth Amendment Rights.*

Inmate Hemphill has only made a Fifth Amendment claim against Chief Miles. (Compl., p. 15). In his Complaint, Inmate Hemphill alleges that Chief Miles was deliberately indifferent to the "rights and safety of pretrial detainees" on June 5, 2012 based upon her statement "I know, and that's what you get…you shouldn't have assaulted one of my officers." (Comp. ¶ 23). Inmate Hemphill makes no other claims alleging a violation of his Fifth Amendment rights.

The Fifth Amendment provides as follows:

> No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger; nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation.

U.S. Const. amend. V.

Clearly, based upon his allegations, Chief Miles did not violate Inmate Hemphill's rights under the Fifth Amendment as the alleged statement does not amount to a constitutional violation. Thus, Inmate Hemphill has failed to adequately and sufficiently state a claim that his Fifth Amendment rights were violated; and

---

[3] Inmate Hemphill has made allegations relating to an individual named Captain Hancock, who, as stated in Section G herein, does not exist.

therefore, Inmate Hemphill's Fifth Amendment claim against Chief Miles should be dismissed as a matter of law, and/or summary judgment should be granted in her favor.[4]

### 3. Inmate Hemphill Has Failed to Allege a Failure to Protect Claim Against Kwanita West.

Inmate Hemphill alleges that CO West obtained information from him about the BGF and informed the leader of the BGF, Tavon White ("Inmate White"), of the information given. In looking at paragraph 4 of Inmate Hemphill's Complaint, however, he states that CO West prevented Inmate White from causing him harm on June 1, 2012. (Compl., ¶ 4). Hence, Inmate Hemphill admits that CO West prevented Inmate White from causing him harm.

Also, Inmate Hemphill never alleges that he was ever harmed by Inmate White on June 1, 2012, June 2, 2012, or any other day and that CO West knew, appreciated, and understood the imminent risk of physical harm to Inmate Hemphill and prevented it from occurring. (Compl.). Hence, even if CO West did inform Inmate White that Inmate Hemphill was disclosing "BGF business," he was never attacked, assaulted, or harmed as a result and/or CO West did not fail to prevent him from being harmed.

Inmate Hemphill also claims that he requested that CO West "move him" to another section to avoid Inmate White and the BGF but acknowledges that "realistically" there was "nowhere to go" because "the BGF runs" BCDC, and therefore, he could not avoid Inmate White or the BGF at BCDC. (Compl., ¶ 5). First, CO West does not have the legal authority to transfer inmates without supervisory approval. (Ex. 1, 3). Second, Inmate Hemphill admits that there was no place that he could go within BCDC that was beyond the reach of the BGF. Finally, Inmate Hemphill never alleges that he was ever physically harmed by Inmate White or any member of the BGF because CO West failed to move him. (Compl.) The facts

---

[4] Chief Miles is also entitled to summary judgment because she investigated Inmate Hemphill's allegations that he was assaulted by correctional officers; and therefore, she did not deprive Inmate Hemphill of an investigation of his claims. (Ex. 3).

alleged by Inmate Hemphill are that he physically attacked and assaulted CO West so that he would be moved. (Compl.).

For all of the reasons stated above, Inmate Hemphill has blatantly failed to state a "failure to protect" claim against CO West. *Young,* 238 F. 3d at 575-77. Therefore, Inmate Hemphill's claim against CO West should be dismissed as a matter of law. *Id* at 577 ("the presence…of a few conclusory legal terms does not insulate a complaint from dismissal under Rule 12(b)(6)...").

4. *Inmate Hemphill Has Failed to Allege a Constitutional Violation by Teron Knight.*

Inmate Hemphill alleges that CO Knight "filed a false report" in violation of his constitutional rights by stating "Inmate Hemphill became aggressive and combative when [I] and assisting officers attempted to subdue Hemphill." (Compl., ¶ 22). Said statement is consistent with CO Knight's observations and there is no dispute that CO Knight observed Inmate Hemphill being aggressive. (Ex. 2. *See also* Compl., ¶¶ 13-14). Additionally, there is no constitutional violation for "filing a false report" as alleged by Inmate Hemphill. *Landrigan v. City of Warwick,* 628 F. 2d 736, 744-45 (1st Cir. 1980); *Lawrence v. City of St. Paul,* 740 F. Supp. 2d 1026, 1039 (D. Minn. 2010). Therefore, Inmate Hemphill has failed to state a claim against CO Knight and Inmate Hemphill's allegations against CO Knight should be dismissed as a matter of law.

E. Defendant Officers Are Entitled to Qualified Immunity

The doctrine of qualified immunity protects government officials from liability for violations of constitutional rights that were not clearly established at the time of the challenged conduct. *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982); *Landrigan,* 628 F. 2d at 744-45; *Lawrence,* 740 F. Supp. 2d at 1039. Qualified immunity is an "immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial. *Mitchell v.*

*Forsyth,* 472 U.S. 511, 526 (1985).  As a general rule, law enforcement officers are entitled to qualified immunity if: (1) their conduct does not violate clearly established constitutional rights; or (2) it was objectively reasonable for them to believe that their acts did not violate those rights. *Harlow,* 457 U.S. at 818; *Winfield v. Bass,* 106 F. 3d 525, 530 (4th Cir. 1997).  The actions of officials violate a "clearly established" constitutional right only if, "in the light of preexisting law, the unlawfulness" of the actions is apparent.  *Anderson v. Creighton,* 483 U.S. 635, 640 (1987).  The Courts do not require of such officials the legal knowledge culled "by the collective hindsight of skilled lawyers and learned judges," but instead only "the legal knowledge of an objectively reasonable official in similar circumstances at the time of the challenged conduct."  *Johnson v. Caudill,* 475 F. 3d 645, 650 (4th Cir. 2007).  Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines.  *Maciariello v. Summer,* 973 F.2d 295, 298 (4th Cir. 1992).  In the end the lodestar for whether a right was clearly established is whether the law "gave the officials 'fair warning' that their conduct was unconstitutional." *Ridpath v. Bd. of Governors Marshall Univ.,* 447 F.3d 292, 313 (4th Cir. 2006).

*1. Shavella Miles is entitled to qualified immunity.*

Inmate Hemphill alleges that Chief Miles was deliberately indifferent to the "rights and safety of pretrial detainees" on June 5, 2012 when he contends that upon informing Chief Miles that he was "assaulted by her officers while handcuffed," she responded "I know, and that's what you get…you shouldn't have assaulted one of my officers."  (Compl. ¶ 23).  As stated above herein, said statement is not a constitutional violation.  Additionally, it is not clearly established that a reasonable person would believe that making such a statement would be a constitutional violation.  Therefore, Chief Miles is entitled to qualified immunity.

*2. Kwanita West is entitled to qualified immunity.*

Inmate Hemphill alleges that CO West was deliberately indifferent "towards his well-being by giving the BGF information" that could cause him harm and by "refusing to move" him from "harm's way." As stated above herein, Inmate Hemphill was never harmed by any member of the BGF on June 1, 2012 or June 2, 2012 and Inmate Hemphill admits that CO West prevented Inmate White from causing him harm. Inmate Hemphill never alleges that a BGF member caused him harm, and therefore, if CO West did in fact refuse to move Inmate Hemphill, he was never harmed as a result. There is no dispute that the person that sustained the harm was in fact CO West, not Inmate Hemphill. Thus, there is no underlying constitutional violation and therefore, CO West is entitled to qualified immunity.

*3. Teron Knight is entitled to qualified immunity.*

It is not established that "filing a false report" is a clear violation of the due process clause of the Fourteenth Amendment. *Landrigan,* 628 F. 2d at 744-45; *Lawrence,* 740 F. Supp. 2d at 1039. Therefore, CO Knight is entitled to qualified immunity relating to Inmate Hemphill's allegation of filing a "false report."

F.  <u>CO Tucker and CO Evans Were Not Present at BCDC on June 2, 2012</u>.

CO Tucker and CO Evans should be dismissed as a matter of law because they were not present at BCDC on June 2, 2012. (Ex. 11-12). While Inmate Hemphill alleges in his Complaint that CO Tucker and CO Evans violated his constitutional rights under the Eighth and Fourteenth Amendments on June 2, 2012 at BCDC, there can be no such finding of a constitutional violation because neither CO Tucker or CO Evans were present at BCDC on said date. (*Id*). On June 2, 2012, CO Tucker was at a hair appointment in Baltimore City and CO Evans was at home. (Ex. 11). Neither officer reported for to BCDC. (Ex. 12). Therefore, neither correctional officer could have violated Inmate Hemphill's

constitutional rights because they were not even there. Inmate Hemphill even acknowledged in his Complaint that he could be wrong about the presence of CO Tucker and CO Evans at BCDC on June 2, 2012. (Compl. ¶ 16). Thus, both CO Tucker and CO Evans should be dismissed as defendants in this case.

G. Captain Hancock Does Not Exist

Inmate Hemphill alleges that "Captain Hancock" violated his due process rights by using excessive force on June 2, 2012, however, there is no individual named Captain Hancock that had any interaction with Inmate Hemphill at BCDC on June 2, 2012. (Ex. 3B). Hence, Captain Hancock does not exist, and therefore, Inmate Hemphill's claims against Captain Hancock should be dismissed as a matter of law.

H. There Is No Genuine Dispute of Material Fact that the Force Used by Defendant Officers Was Applied in Good Faith to Restore Order and Control, Not Punishment

The correctional officers that were present, used force on June 2, 2012, and that are defendants in this case, i.e. CO Knight, Sgt. Porter, and Captain Hickson, are entitled to summary judgment as a matter of law. Said officers dispute Inmate Hemphill's version of what occurred on June 2, 2012 and do not agree with his allegations whatsoever. (Ex. 6). It is their contention that they used the amount of force necessary to subdue a hostile, combative and resistance detainee that had just brutally beaten CO West. (*Id*).

The mere fact that Inmate Hemphill was handcuffed does not mean he still did not pose a serious threat of harm to the correctional officers that responded to his attack on CO West. First, Inmate Hemphill admits that he had a knife on June 2, 2012 that he intended to use. Second, CO West believes that Inmate Hemphill first struck her with a knife to the head even though the outside observer saw his first strike as a punch. (Ex. 1). Hence, Inmate Hemphill could have concealed his knife in his fists and

still been able to use his knife even while he was handcuffed. Third, Inmate Hemphill was still combative and resistant when responding correctional officers arrived to the scene. (Exs. 2, 4-5). Thus, there is no evidence to suggest that Inmate Hemphill no longer posed a threat once he was handcuffed.

Inmate Hemphill was not injured as a result of any force that was used against him. (Ex. 6). While the non-existence of a significant injury does not negate a claim for the use of excessive force, the lack of significant injury does however, demonstrate that Defendant Officers' use of force was not excessive or malicious as the "extent of injury may provide some indication of the amount of force applied" and an inmate that "complains of a 'push or shove' that cause no discernible injury almost certainly fails to state a valid excessive force claim. *Wilkins v. Gaddy,* 559 U.S. 34, 130 S. Ct. 1175, 1178 (2010). Inmate Hemphill did not sustain any significant injury whatsoever on June 2, 2012. (Ex.6). Nor does he allege it. (Compl.). In fact, Inmate Hemphill admits to refusing medical treatment immediately after he was allegedly assaulted by correctional officers. (Compl. ¶ 19). Because not "every malevolent touch by a prison guard gives rise to a federal cause of action," because the force used was not "repugnant to the conscience of mankind;" and was applied in a good faith effort to maintain and restore order of an unruly inmate that brutally assaulted CO West, Defendant Officers are entitled to summary judgment in their favor. *Wilkins,* 130 S. Ct. at 1178. *See also Whitley v. Albers,* 475 U.S. 312, 320-21 (1986).

## VI.    CONCLUSION

WHEREFORE, for the reasons set forth herein, Defendant Officers respectfully request that this Court grant their motion to dismiss and/or grant summary judgment in their favor.

Respectfully submitted,

DOUGLAS F. GANSLER
Attorney General of Maryland

_____/s/_____
Tamal A. Banton
Federal Bar No. 27206
Assistant Attorney General
tbanton@oag.state.md.us
(410) 585-3084 telephone

Maryland Office of Attorney General
Department of Public Safety & Correctional Services
115 Sudbrook Lane, Suite A
Pikesville, Maryland 21208
(410) 764-5366 facsimile
*Attorneys for Defendant Officers*

Dated: March 25, 2013

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

CALVIN HEMPHILL, #406562       *

          Plaintiff,       *

v.       *       CIVIL ACTION NO.  WDQ-12-2266

SHAVELLA MILES, *et al.*       *

          Defendants.       *

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## EXHIBIT LIST

1. Affidavit of Kwanita West

2. Affidavit of Teron Knight

3. Affidavit of Shavella Miles

4. Affidavit of Michael Porter

5. Affidavit of Kevin Hickson

6. (A) Photographs of Inmate Hemphill (6/2/2012) and (B) Redacted Medical Records

7. Photographs of Kwanita West (6/2/2012)

8. Notice of Infraction to Inmate Hemphill

9. Criminal Charging Documents re: Inmate Hemphill

10. Inmate Hemphill's ARP to MRDCC

11. (A) Affidavit of Tracey Tucker and (B) Tracey Tucker Timesheet

12. (B) Affidavit of Lisa Evans and (B) Lisa Evans Timesheet

13. Division of Pretrial Detention and Services Directive No. 180-1, "Adult Resident Grievance Procedures"

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 2Fifth day of March 2013, a copy of Defendant Officers' Motion to Dismiss, or in the alternative, Motion for Summary Judgment and Memorandum in Support thereof along with the attached exhibits, in addition to being electronically filed, were mailed, first-class, postage prepaid, to:

> Calvin Hemphill, #406562
> Roxbury Correctional Institution
> 18701 Roxbury Road
> Hagerstown, Maryland 21746
> *Pro Se Plaintiff*


_____/s/_____

Tamal A. Banton